IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BASIL SIMON IN HIS CAPACITY AS RECEIVER FOR FUTURENET GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CAPITAL MERCHANT SERVICES, LLC, <br><br> Defendant. | Docket No.: 19-cv-00904 |

## COMPLAINT

Plaintiff Basil Simon, in his capacity as the court-appointed receiver for FutureNet Group, Inc. ("FutureNet"), by and through his attorneys, White and Williams LLP, as and for his complaint against Defendant Capital Merchant Services, LLC ("CMS") alleges:

## NATURE OF THE ACTION

1. This is an action to recover $322,592.59 (the "Funds") that were improperly restrained and, thereafter, improperly seized by CMS in connection with its unlawful efforts to collect upon a judgment (the "Judgment") against FutureNet. CMS obtained the Judgement in February 2018 and immediately issued a restraining notice to Comerica Bank, a Texas-based bank with branches in Texas, Michigan and California, but no branches or retail banking operations in New York. As a result, FutureNet's accounts in Michigan were frozen. Thereafter, CMS issued a property execution and directed the Nassau County sheriff to improperly serve a levy and demand upon Comerica Bank and extort turnover of the Funds to the sheriff and, ultimately, CMS. CMS' actions violated New York's Civil Practice Law and Rules (the "CPLR") and the well-established Separate Entity Rule and give rise to this action.

**THE PARTIES**

2. Plaintiff Basil Simon is the court-appointed receiver for FutureNet, a corporation duly organized under the laws of Michigan with its principal place of business located at 12801 Auburn St., Detroit, Michigan. It does not maintain an office in New York.

3. Basil Simon, a citizen and resident of the State of Michigan, was appointed Receiver by the Circuit Court for the County of Wayne, State of Michigan.

4. Defendant CMS is a New York limited liability company with its principal place of business located at 30 Board Street, New York, New York. Upon information and belief, its members are citizens and residents of New York, New Jersey or Connecticut and no member is a citizen or resident of Michigan.

**JURISDICTION**

5. This Court has original jurisdiction over this matter based upon 28 U.S.C. § 1332(a) because the Plaintiff is not a citizen of the same state as Defendant or its members and the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

**FACTS**

6. At all times material hereto, FutureNet provided infrastructure services in areas such as construction, technology, perimeter security, and energy/environment to government and commercial customers.

7. Defendant CMS is a merchant cash advance company ("MCA") that provides hard-money lending to small businesses in desperate need of cash under the guise of so-called "Purchase and Sale of Future Receivables Agreement."

8. Pursuant to one such agreement dated December 27, 2017 (the "Agreement"), CMS advanced $550,000 to FutureNet purportedly in exchange for the purchase of $780,450 in

2

future receivables which was to be repaid in just 18 weeks through fixed daily payments, each in the amount of $8,672.

9. In February 2018, FutureNet had insufficient receipts to pay the fixed daily payments required under the Agreement.

10. As a result, CMS declared a default and filed an Affidavit of Confession and, on February 9, 2018, CMS obtained a judgement (previously defined as the "Judgment") against FutureNet in the amount of $777,957.39 in an action entitled *Capital Merchant Services LLC v. FutureNet Group, Inc. d/b/a FutureNet Group, et. ano.*, Supreme Court of the State of New York, County of Orange, Index No. EF001637-2018).

11. On February 16, 2018, CMS, through its attorney Christopher Castro, served an Information Subpoena with Restraining Notice (the "Restraining Notice") on Comerica Bank by delivering the Restraining Notice to Comerica Bank c/o Corporate Creations Network, Inc. ("Corporate Creations"), 15 North Mill Street, Nyack, New York.

12. A copy of the Restraining Notice is attached hereto as Exhibit 1.

13. At all times material hereto, FutureNet had opened and maintained one or more bank accounts (collectively, the "Comerica Accounts") at a Comerica Bank branch located in Michigan.

14. Upon receipt of the Restraining Notice, Comerica Bank restrained FutureNet's accounts and thereby prevented the company from withdrawing the Funds.

15. On February 22, 2018, CMS was advised that its Restraining Notice was unlawful because (1) Comerica Bank was not subject to the general jurisdiction of New York; and (2) FutureNet's bank accounts were opened and maintained in Michigan. *See* Ex. 2.

16. On the same day, CMS was advised that its Restraining Notice was tortiously interfering with the superior UCC rights of FutureNet's senior secured lenders. *See* Ex. 3

17. CMS was also advised that if it did not immediately withdraw its improper Restraining Notice, FutureNet would not be able to make payroll. *See* Ex. 4.

18. As a direct result of CMS's failure to withdraw its improper Restraining Notice, FutureNet was unable to make payroll and defaulted on its obligations to its senior secured lenders.

19. Despite knowing that the Comerica Accounts were opened and maintained by FutureNet at a bank branch in Michigan, CMS, through its attorney Renata Bukhman, issued a property execution dated April 17, 2018 (the "Property Execution") which was addressed and directed to Comerica Bank c/o Corporate Creations Network, Inc., 15 North Mill Street, Nyack, New York 10960.

20. A copy of the Property Execution is attached hereto as Exhibit 5.

21. The Property Execution was delivered to the Office of the Sheriff of Nassau County (the "Sherriff").

22. On April 20, 2018, the Sherriff issued a levy and demand (the "Levy and Demand") to Comerica Bank and, upon and information and belief, delivered the Levy and Demand to Comerica Bank c/o Corporate Creations Network Inc., Nyack, New York 10960.

23. The Levy and Demand stated that Comerica was "required by section 5232(a) of the Civil Practice Law and Rules forthwith to transfer to the Sherriff" all of FutureNet's property within its possession and, further, that Comerica was "forbidden" from making any other transfers of such property.

24. The Levy and Demand also threatened that if Comerica Bank failed to turn over the Funds in FutureNet's accounts, it could be punished: "**FAILURE TO TURN OVER PROPERTY OR RESPOND TO ANY PART OF THIS ORDER MAY BE PUNISHABLE IN COURT.**"

25. On April 27, 2018, in the face of the threat of being punished in court, Comerica Bank complied with the improper Property Execution by turning over $322,592.59 to the Rockland County Sheriff's Office. *See* Ex. 5.

26. Upon information and belief, the Funds have since been remitted by the Sheriff to CMS or its attorneys.

## PROCEDURAL BACKGROUND

27. On May 7, 2018, Basil Simon was appointed as the Receiver for FutureNet Group, Inc., and FutureNet Security Solutions, LLC (the "Receivership Entities"). *See* Ex. 6.

28. The primary purpose of the Receiver is "to achieve the highest return to secured creditors, unsecured creditors, and equity holders (i.e., owners)." *See id*, ¶ 3(p).

29. The Receiver was appointed to protect the first-priority secured interests of Invest Detroit, a certified Community Development Financial Institution (and a non-profit 501(c)(3) organization), as well as the interest of second lien holders Plymouth Venture Partners II, LP and Plymouth Management Company. *See id*., ¶ 3(c), (o).

30. Together, as of April 26, 2018, the secured creditors have a claim against the Receivership Entities in the principal amount of not less than $2,499,317.58. *See id*., ¶ 3(f).

31. The Receiver was also appointed to protect the secured creditors against the recent judgments and enforcement actions taken by the unsecured creditors of the Receivership Entities, which specifically includes the Judgment obtained by CMS. *See id*., ¶ 3(i).

32. To achieve these goals, the Receiver, among other things, was empowered to defend and/or institute suits including, without limitation, actions challenging the garnishment of funds from the Receivership Entities by CMS. *See id.*, at ¶ 13 (f).

33. On June 29, 2018, the Michigan Court issued an order authorizing the Receiver to employ White and Williams LLP as Special Counsel for the Receivership. *See* Ex. 7.

### FIRST CAUSE OF ACTION
**(Wrongful Restraint and Execution)**

34. Plaintiff repeats and incorporates each of the allegations set forth in the above paragraphs as if more fully set forth herein.

35. Persons who procure, direct or assist in the commission of a wrongful act by an officer in issuing an execution, or in making a levy or sale thereunder, are liable to the person injured by the act.

36. In attempting to collect upon the judgment, CMS committed three wrongful acts in that it: (i) improperly restrained the Funds in violation of the Separate Entity Rule; (ii) directed service of the Levy and Demand in violation of the CPLR and (iii) directed the issuance of the Levy and Demand to obtain turnover of the Funds in violation of the Separate Entity Rule.

37. Under New York's well-settled "Separate Entity Rule," each branch of a bank is considered a separate entity for judgment enforcement purposes such that judgment creditors are prohibited from restraining or seeking the turnover of funds in accounts opened and maintained at branches outside of the state of New York.

38. Comerica Bank is a Texas banking association which maintains branches in Texas, Michigan, California, Arizona and Florida. Its principal place of business is in Dallas, Texas and, upon information and belief, it does not maintain any branches or conduct any retail banking operations in the State of New York.

39. CMS knew or should have known and indeed was advised by FutureNet that the Restraining Notice violated the Separate Entity Rule because it sought to restrain the Comerica Accounts which were opened and maintained by FutureNet at a Michigan branch of Comerica Bank.

40. Notwithstanding this knowledge, CMS issued and, thereafter, refused to withdraw the Restraining Notice.

41. Indeed, instead of withdrawing the Restraining Notice, it issued the Property Execution directing the Sheriff to make a Levy and Demand upon Comerica Bank c/o Corporate Creations and attempt to seize the Funds which the Sherriff did.

42. Under New York law, a Levy and Demand is void and ineffective unless it is issued and served in compliance with CPLR § 5232(a).

43. Pursuant to CPLR 5232(a), the Sheriff was required to serve the Levy and Demand in the same manner as a summons, "except that such service shall not be made by delivery to a person authorized to receive service of a summons solely by a designation filed pursuant to a provision of law other than rule 318."

44. Upon information and belief, although Comerica Bank lists Corporate Creations as its registered agent pursuant to New York General Business Law ("NY GBL") § 302, it has not made the required filings with Nassau County to designate Corporate Creations as its agent for service of process pursuant to CPLR § 318.

45. Accordingly, service of the Levy and Demand upon Corporate Creations was not effective service under CPLR § 5232(a) and the Levy and Demand was void and ineffective.

46. CMS knew or should have known that service upon Corporate Creations of the Levy and Demand was not in compliance with CPLR § 5232(a) and that, as a result, the Levy and Demand was void and ineffective.

47. CMS also knew or should have known that the Levy and Demand was void and ineffective because it violated the Separate Entity Rule in that it sought the turnover of funds in accounts opened and maintained in a Michigan branch of Texas-based banking association that does not maintain any branches or conduct any retailing banking operations in New York.

48. Facing threats of contempt, Comerica Bank complied with the Levy and Demand and, upon information and belief, it delivered the Funds to the Sheriff who, in turn, remitted the Funds to the CMS.

49. By reason of the foregoing, CMS is liable to the Plaintiff for damages in an amount of not less than $322,592.59, together with statutory pre-judgment interest accruing as of February 16, 2018.

## SECOND CAUSE OF ACTION
**(Conversion)**

50. Plaintiff repeats and incorporates each of the allegations set forth in the above paragraphs as if more fully set forth herein.

51. By restraining and seizing the Funds as described above, CMS has exercised control over the Funds to the detriment of FutureNet who is the owner of the Funds.

52. By reason of his appointment as the receiver in of FutureNet, the Plaintiff is the successor-in-interest to FutureNet's interest in the Funds.

53. By reason of the foregoing, CMS is liable to the Plaintiff in amount not less than $322,592.59, together with statutory pre-judgment interest accruing as of February 16, 2018.

## THIRD CAUSE OF ACTION
**(Trespass to Chattel)**

54. Plaintiff repeats and incorporates each of the allegations set forth in the above paragraphs as if more fully set forth herein.

55. The Funds in the Comerica Accounts were property of FutureNet.

56. By reason of its unlawful restraints and seizure of the Funds as described above, CMS intentionally interfered with FutureNet's use of the Funds resulting in damages to FutureNet.

57. By reason of his appointment as receiver of FutureNet, the Plaintiff is the successor-in-interest to FutureNet's interest in the Funds and the claims asserted herein.

58. By reason of the foregoing, CMS is liable to the Plaintiff in amount not less than $322,592.59, together with statutory pre-judgment interest accruing as of February 16, 2018.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks entry of judgment against CMS awarding Plaintiff:

(i) $322,592.59 in direct damages, plus 9% statutory prejudgment from April 27, 2018;

(ii) Consequential damages resulting from the unlawful Restraining Notice and Property Execution;

(iii) Punitive damages;

(iv) Reasonable attorney's fees and costs; and

(v) Any such further relief as the Court shall deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedures.

Dated: January 29, 2019

**WHITE AND WILLIAMS LLP**

By: /s/ Shane R. Heskin

Shane R. Heskin
Stuart E. Wells
7 Times Square, Suite 2900
New York, NY 10036-6524
(215) 864-6329
heskins@whiteandwilliams.com

*Attorneys for Plaintiff*