UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BASIL SIMON, *in his capacity as receiver for FutureNet Group, Inc.*,

Plaintiff,

-v.-

CAPITAL MERCHANT SERVICES, LLC,

Defendant.

19 Civ. 904 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

In February 2018, Defendant Capital Merchant Services, LLC ("Defendant" or "CMS") obtained a judgment against FutureNet Group, Inc. ("FutureNet") in New York State Supreme Court. CMS sought to collect on that judgment by obtaining funds that FutureNet had in its bank account with Comerica Bank. To that end, CMS caused the sheriff of Rockland County to levy on FutureNet's Comerica bank account. Ultimately, Comerica withdrew funds that FutureNet had deposited in a Comerica bank account in Michigan, and delivered them to the sheriff, who then remitted them to CMS.

Plaintiff Basil Simon ("Plaintiff" or the "Receiver"), in his capacity as receiver for FutureNet, now seeks to recover the funds CMS obtained from FutureNet's Comerica bank account. The Receiver argues that the restraining notice, execution, and levy served on Comerica were void *ab initio* and brings three claims against CMS: (i) wrongful restraint and execution; (ii) conversion; and (iii) trespass to chattel. CMS responds by moving to dismiss the Amended Complaint. For the reasons detailed below, CMS's motion is granted.

# BACKGROUND[1]

## A.    Factual Background

In December 2017, FutureNet, a Michigan-based company, entered into an agreement with CMS, whereby CMS advanced FutureNet $550,000 in exchange for the purchase of $780,450 in future receivables to be repaid in 18 weeks through fixed daily payments.  (Am. Compl. ¶¶ 2, 8).  In February 2018, FutureNet failed to make its required daily payments to CMS.  (*Id.* at ¶ 9).  CMS declared FutureNet to be in default, and obtained a judgment (the "Judgment") against FutureNet in the amount of $777,957.39 in an action entitled *Capital Merchant Services LLC* v. *FutureNet Group, Inc.*, Index No. EF001637-2018, in the Supreme Court of the State of New York, County of Orange.  (*Id.* at ¶ 10).

FutureNet maintained one or more bank accounts with Comerica Bank, specifically, at a Comerica branch located in Redford, Michigan.  (Am. Compl. ¶ 15).  Comerica is based in Texas, and does not maintain any bank branches in New York.  (*Id.* at ¶¶ 15-19).  Comerica has only one office in New York, a limited-services loan production office in New York City that does not accept deposits or maintain customer deposit accounts.  (*Id.*).

---

[1]     This Opinion draws its facts from the Receiver's Amended Complaint ("Am. Compl." (Dkt. #17)), the well-pleaded allegations of which are taken as true for purposes of this motion, and the exhibits attached to the Amended Complaint.  *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).

For convenience, the Court refers to Defendant's Memorandum of Law in Support of the Motion to Dismiss as "Def. Br." (Dkt. #24), Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #27), and Defendant's Reply Memorandum of Law in Support of the Motion to Dismiss as "Def. Reply" (Dkt. #30).

On February 16, 2018, CMS served an Information Subpoena with Restraining Notice (the "Restraining Notice") on Comerica, by delivering the Restraining Notice to Comerica in care of Corporate Creations Network, Inc. ("Corporate Creations") at 15 North Mill Street, Nyack, New York, which is located in Rockland County. (Am. Compl. ¶ 12).[2] The Restraining Notice directed Comerica to answer certain questions under oath, and forbade it from transferring any property it held on behalf of FutureNet. (*Id.* at ¶ 20). The Restraining Notice further advised Comerica that if it failed to comply with the terms of the Restraining Notice, Comerica could be subject to fines and imprisonment for contempt of court, as well as fines for violating a judicial subpoena under New York Civil Practice Law and Rules ("CPLR") § 2308(a). (*Id.* at ¶ 21). Upon receipt of this Restraining Notice, Comerica restrained FutureNet's accounts so that FutureNet could not withdraw the funds deposited in its Comerica bank accounts. (*Id.* at ¶ 22).

On February 22, 2018, FutureNet wrote to CMS, advising it that the Restraining Notice was unlawful because Comerica was not subject to general jurisdiction in New York, and FutureNet's bank accounts were opened and maintained in Michigan. (Am. Compl. ¶ 23 & Ex. 2). CMS did not retract its Restraining Notice, and FutureNet was unable to withdraw funds needed to pay its employees and to make payments on its obligations to lenders. (*Id.* at ¶¶ 25-26).

---

[2]    Comerica Bank lists Corporate Creations as its registered agent pursuant to New York General Business Law § 302. (Am. Compl. ¶ 65).

On April 17, 2018, CMS delivered an Execution with Notice to Garnishee (the "Execution") to the sheriff of Rockland County, New York. (Am Compl. ¶ 27). The Execution directed the sheriff to levy upon FutureNet's Comerica bank accounts by delivering the Execution to Comerica in care of Corporate Creations. (*Id.*). The Execution stated that, pursuant to CPLR § 5232(a), Comerica was obligated to turn over all property it held for FutureNet to the sheriff. (*Id.* at ¶ 29). The sheriff then issued a levy and demand (the "Levy") to Comerica that was delivered to Corporate Creations. (*Id.* at ¶¶ 27-32). The Levy stated that Comerica was required to transfer to the sheriff all property Comerica held for FutureNet. (*Id.* at ¶ 32). The Levy also stated that if Comerica failed to turn over the funds in FutureNet's accounts, it could be punished: "FAILURE TO TURN OVER PROPERTY OR RESPOND TO ANY PART OF THIS ORDER MAY BE PUNISHABLE IN COURT." (*Id.* at ¶ 33).

On April 27, 2018, Comerica complied with the Execution and Levy by withdrawing all of the funds held in FutureNet's Comerica account, $322,592.59, and issuing a bank check in that amount to the Rockland County Sheriff's Office. (Am. Compl. ¶ 34). This money was then remitted to CMS. (*Id.* at ¶ 35).

**B.    Procedural Background**

By order of the Circuit Court for the County of Wayne (Michigan) dated May 7, 2018 (the "Receivership Order"), Basil Simon was appointed Receiver for FutureNet. (Am. Compl. ¶¶ 3, 36). The Receiver filed his Complaint in this action on January 30, 2019. (Dkt. #1). On March 27, 2019, CMS requested

leave to file a motion to dismiss. (Dkt. #10). The Court held a pre-motion conference on April 30, 2019, in which it granted the Receiver leave to amend his complaint. (Dkt. #12, 20 (transcript of proceedings)). The Receiver filed his Amended Complaint on May 29, 2019. (Dkt. #17). CMS filed its motion to dismiss on June 28, 2019. (Dkt. #22, 23, 24). The Receiver filed his opposition brief on August 2, 2019. (Dkt. #27). This motion became fully briefed when CMS filed its reply brief on September 16, 2019. (Dkt. #30, 31).

On December 27, 2019, CMS filed a letter with the Court, notifying the Court of a recent decision issued by United States District Judge John G. Koeltl in the matter of *Basil Simon* v. *GTR Source, LLC*, No. 19 Civ. 1471 (JGK), 2019 WL 7383279 (S.D.N.Y. Dec. 26, 2019). (Dkt. #32). CMS argued that the decision in *GTR Source* would collaterally estop the Receiver from arguing that he suffered damages as a result of CMS's alleged misconduct, which would consequently mandate that this Court grant CMS's motion to dismiss. (*Id.*). On January 2, 2020, this Court ordered the Receiver to respond to the arguments raised in CMS's December 27, 2019 letter on or before January 10, 2020. (Dkt. #33). The Receiver filed a letter brief on January 10, 2020, arguing that the doctrine of collateral estoppel was not applicable. (Dkt. #35).

**DISCUSSION**

**A. Applicable Law**

**1. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power

to adjudicate it." *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted); *accord Sokolowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013). A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"Subject-matter jurisdiction is a threshold issue that must be addressed prior to the merits." *Allen* v. *N.Y.C. Hous. Auth.*, No. 15 Civ. 173 (ALC), 2016 WL 722186, at *4 (S.D.N.Y. Feb. 19, 2016). Federal courts have original jurisdiction over civil actions in which the parties have diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). This is known as diversity jurisdiction, as contrasted with jurisdiction based on the existence of a federal question. *See* 28 U.S.C. § 1331. Diversity jurisdiction requires complete diversity between the parties, meaning that no plaintiff has the same citizenship as any defendant. *Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

To assert federal subject matter jurisdiction, a party must have Article III standing — "the personal interest that must exist at the commencement of the litigation." *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (citing *Davis* v. *Fed. Election Comm'n,* 554 U.S. 724, 732 (2008)). A standing issue may be raised at any stage in a litigation, *id.* (citing *Arbaugh* v. *Y & H Corp.*, 546 U.S. 500, 506 (2006)), and "'[t]he party invoking federal jurisdiction

bears the burden of establishing the[ ] elements' of Article III standing," *id.*

(quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1997)).

The Second Circuit has identified two types of Rule 12(b)(1) motions —

facial and fact-based.  *See Carter*, 822 F.3d at 56-57; *see also Katz* v. *Donna*

*Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017).  A facial Rule 12(b)(1)

motion is one "based solely on the allegations of the complaint or the complaint

and exhibits attached to it."  *Carter*, 822 F.3d at 56.  A plaintiff opposing such

a motion bears no burden to introduce evidence to substantiate those

allegations.  *Id.*  Instead, to resolve a facial Rule 12(b)(1) motion, a district court

must "determine whether [the complaint and its exhibits] allege[ ] facts that"

establish subject matter jurisdiction.  *Id.* (quoting *Amidax Trading Grp.* v.

*S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).  And to make

that determination, a court must accept the complaint's allegations as true

"and draw[ ] all reasonable inferences in favor of the plaintiff."  *Id.* at 57

(internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based

Rule 12(b)(1) motion, proffering evidence beyond the complaint and its

exhibits."  *Carter*, 822 F.3d at 57; *see also MMA Consultants 1, Inc.* v. *Rep. of*

*Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining fact-based

Rule 12(b)(1) motion as one where "the defendant puts forward evidence to

challenge the factual contentions underlying the plaintiff's assertion of subject-

matter jurisdiction").  "In opposition to such a motion, [plaintiffs] must come

forward with evidence of their own to controvert that presented by the

defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (internal citations and quotations omitted). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction." *Carter*, 822 F.3d at 57.

### 2. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks and alterations omitted)).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## B.    Analysis

CMS presents a myriad of arguments as to why the Amended Complaint must be dismissed: (i) the Receiver lacks standing to bring this suit, so the Court lacks subject matter jurisdiction; (ii) the Court should decline to exercise subject matter jurisdiction; (iii) the Amended Complaint fails to state a claim for relief; (iv) certain of the Receiver's claims are duplicative; (v) certain necessary parties have not been joined; and (vi) the Receiver's entire theory of the case fails as a matter of law. The Court first addresses those of CMS's arguments that touch upon the Court's subject matter jurisdiction over this matter. *See Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." (citing *Steel Co.* v. *Citizens for Better Env't*, 523 U.S. 83 (1998))). Having satisfied itself that it has subject matter jurisdiction over the action, the Court examines whether the Amended Complaint plausibly states a claim for relief. The Court concludes that the Receiver is collaterally estopped from arguing that he has suffered

damages on the facts alleged in the Amended Complaint. In the alternative, the Court finds that the Receiver has failed to allege that either he or FutureNet suffered legally cognizable damages. Because damages is an essential element to each of the Receiver's three claims, the Court grants CMS's motion to dismiss for failure to state a claim.

### 1. The Court Has Subject Matter Jurisdiction

Preliminarily, CMS argues that the Court should dismiss the action for lack of subject matter jurisdiction. In presenting this argument, CMS does not contest that the suit meets the statutory requirements for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Nor could it — the Amended Complaint asserts that CMS is a citizen of New York, FutureNet is a citizen of Michigan, and the amount in controversy exceeds $75,000. Instead, CMS argues that the Receiver lacks standing to bring the suit. (Def. Br. 13-16). If the Receiver does have standing, CMS urges the Court to abstain from exercising subject matter jurisdiction, because the action is merely ancillary to the state court proceeding in which CMS obtained a judgment against FutureNet. (*Id.* at 2-4). As set forth here, the Court finds that the Receiver does have standing and that no basis exists to decline to exercise subject matter jurisdiction.

### a. The Receiver Has Standing to Bring This Suit

Article III of the Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const., Art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List* v.

*Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan*, 504 U.S. at 560). To have Article III standing, "the plaintiff [must have] 'alleged such a personal stake in the outcome of the controversy' as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf." *Cortlandt St. Recovery Corp.* v. *Hellas Telecomm., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975)) (alterations in *Cortlandt St. Recovery Corp.*). The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc.* v. *Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan*, 504 U.S. at 560). "The plaintiff must have [i] suffered an injury in fact, [ii] that is fairly traceable to the challenged conduct of the defendant, and [iii] that is likely to be redressed by a favorable judicial decision." *Id.*

CMS claims that the Receiver lacks standing because his claims attempt to assert a defense that belongs to Comerica, not FutureNet. (Def. Br. 13). According to CMS, the claims asserted in the Amended Complaint are premised on the fact that the state of New York lacked personal jurisdiction over FutureNet's Comerica account, which renders void the Restraining Notice, Execution, and Levy on FutureNet's funds held by Comerica. (*Id.*). CMS argues that Comerica could have argued that it need not comply with those processes due to lack of personal jurisdiction, but that FutureNet and the Receiver have no ability to invoke that defense on Comerica's behalf. (*Id.* (citing *O'Connell* v. *Three Park Ave. Bldg. Co., L.P.*, 227 B.R. 53, 58 (Bankr. S.D.N.Y.

1998) ("Insufficiency of process and lack of personal jurisdiction are personal defenses which, therefore, may not be raised on behalf of another."))).

CMS misunderstands both the Receiver's allegations and the injury FutureNet claims to have suffered. The Receiver does not invoke lack of personal jurisdiction over Comerica as a defense. Rather, the Receiver claims that the Restraining Notice, Execution, and Levy were void *ab initio* because: (i) New York State lacked personal jurisdiction over the party on which those processes were served; and (ii) the processes did not comply with CPLR § 5232 because they were not served on an appropriate agent of Comerica. (Am. Compl. ¶¶ 44-73). According to the Receiver, if the processes were void *ab initio*, then the manner in which CMS came to possess FutureNet's funds was unlawful. What is more, if this were true, FutureNet would have suffered an injury in fact, one that is fairly traceable to CMS's conduct, and one that might be redressed by a judicial decision. As receiver for FutureNet, Plaintiff has thus alleged a personal stake in the outcome of the controversy sufficient to satisfy Article III's standing requirements.[3]

---

[3] CMS also argues that the Receiver lacks standing to bring this suit because the receivership order issued by the Circuit Court for Wayne County, Michigan, which order serves as the Receiver's mandate to act, does not include the funds in question amongst the property that the Receiver may attempt to recover. (Def. Br. 14-16). CMS is correct that the receivership order authorized the Receiver to take possession over the assets FutureNet held on May 7, 2018, and CMS took possession of the funds in question on April 27, 2018. (*Id.*; Am. Compl., Ex. 6). But the receivership order also empowers the Receiver to "challenge prior garnishments of funds," which is precisely what the Receiver is doing in this proceeding. (Am. Compl., Ex. 6 ¶13(e)). Further, the Circuit Court plainly approved the Receiver's interpretation of the receivership order as allowing it to commence this action, because the court authorized the Receiver to employ counsel to do so. (*Id.*, Ex. 7). The Court concludes that the Receiver was acting within the bounds of the receivership order in initiating this suit.

### b.    The Court May Not Decline to Exercise Jurisdiction

Though the Receiver's suit meets constitutional standing requirements as well as the statutory requirements for diversity jurisdiction, CMS asks the Court to decline to exercise jurisdiction over it, because the claims it raises are merely ancillary to the New York state court litigation that resulted in the entry of the Judgment in favor of CMS and against FutureNet.  To support this argument, CMS cites a line of cases suggesting that post-judgment enforcement actions, like this one, are considered to be ancillary to the initial action in which a judgment was entered.  (Def. Br. 3).  But for the linchpin of its argument — that a "District Court may abstain from exercising subject-matter jurisdiction over an action in which it might otherwise have jurisdiction because the action is merely ancillary to an existing state court matter" — CMS cites to an earlier decision of this Court, *Multibank, Inc.* v. *Access Glob. Capital LLC*, No. 17 Civ. 3467 (KPF), 2017 WL 6028535 (S.D.N.Y. Dec. 4, 2017).  (Def. Br. 3).

CMS misperceives the import of *Multibank*.  There, the petitioner had filed a turnover proceeding in New York state court, and the defendant had removed it to federal court.  *Multibank, Inc.*, 2017 WL 6028535, at *1-3.  Petitioner moved to remand the proceeding back to state court.  *Id.*  In granting that motion to remand, this Court stated that "[c]ourts in this Circuit have long held that parties may not remove cases that are ancillary to civil actions brought in state court."  *Id.* at *4.  The well-established principles discussed in *Multibank* are inapposite here, where the case was originally filed in federal

court and is not subject to a motion for remand.  And CMS has not cited to any other doctrines of abstention that would permit this Court to dismiss the present suit on jurisdictional grounds while the requirements of diversity jurisdiction are met.  CMS's argument is not only unsupported by case law, but it also conflicts with the Supreme Court's clear directive that "a federal court's obligation to hear and decide cases within its jurisdiction 'is virtually unflagging.'"  *Susan B. Anthony List*, 573 U.S. at 167 (quoting *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)).  Thus, even if the Court were to accept that this action is ancillary to a state court proceeding, it would not decline to exercise jurisdiction over the action.

### 2.    The Doctrine of Collateral Estoppel Bars the Receiver's Claims

The Receiver brings three tort claims in this action: (i) wrongful restraint and execution; (ii) conversion; and (iii) trespass to chattel.  Beginning with the first, wrongful execution:

> has long been recognized as a cause of action where the underlying debt was either discharged or was otherwise invalid.  This is even the case if the debt appears valid at the time of the levy if later the debt is discharged or invalidated as the debt is deemed void *ab initio*.

*Bam Bam Entm't LLC* v. *Pagnotta*, 75 N.Y.S.3d 804, 808 (Sup. Ct. 2018).  "A claim for trespass to chattels overlaps with a claim for conversion:  Where a defendant merely interfered with plaintiff's property then the cause of action is for trespass, while denial of plaintiff's dominion, rights or possession is the basis of an action for conversion."  *Simon* v. *GTR Source, LLC*, No. 19 Civ. 1471 (JGK), 2019 WL 7283279, at *5 (S.D.N.Y. Dec. 26, 2019) (quoting *DeAngelis* v.

*Corzine*, 17 F. Supp. 3d 270, 283 (S.D.N.Y. 2014)).  Each of these causes of action has as an essential element that the claimant suffered damages as a result of the alleged wrongdoing.  *See GTR Source*, 2019 WL 7283279, at *4 ("Where a judgment debtor seeks to recover for wrongful execution on an otherwise valid judgment, the plaintiff judgment debtor may prevail only on a showing of negligence on the part of the executor and damages to the judgment debtor."); *Pagnotta*, 75 N.Y.S.3d at 810-12 (requiring plaintiff establish the existence of damages to prevail on a claim for wrongful execution); *DeAngelis*, 17 F. Supp. 3d at 283 (stating that conversion and trespass to chattels require that the plaintiff establish that the defendant's conduct resulted in harm).

On December 26, 2019, Judge Koeltl issued a decision in *GTR Source*, a factually similar case that had been initiated by the Receiver against another of FutureNet's judgment creditors, GTR Source LLC.  There, the Receiver also claimed that the defendant had committed wrongful restraint and execution, conversion, and trespass to chattels by levying on FutureNet's funds held in a Comerica bank account through a void execution and levy.  Judge Koeltl granted summary judgment in favor of the defendant, holding that the Receiver could not have suffered damages because the defendant held a valid state court judgment against FutureNet.  *GTR Source*, 2019 WL 7383279, at *4-8.  CMS argues that Judge Koeltl's decision collaterally estops the Receiver from claiming that he or FutureNet suffered damages from CMS's alleged wrongful restraint and execution, conversion, or trespass to chattels, because CMS held

15

a valid state court judgment against FutureNet.  (Dkt. #32).  For the reasons detailed below, the Court agrees.

### a.    Collateral Estoppel Generally

Collateral estoppel, also known as issue preclusion, "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc.* v. *Simon*, 310 F.3d 280, 288 (2d Cir. 2002); *see generally Proctor* v. *LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013).  Under federal law, collateral estoppel applies if "[i] the identical issue was raised in a previous proceeding; [ii] the issue was actually litigated and decided in the previous proceeding; [iii] the party had a full and fair opportunity to litigate the issue and [iv] the resolution of the issue was necessary to support a valid and final judgment on the merits." *Bulovic* v. *Stop & Shop Supermarket Co., LLC*, 698 F. App'x 21, 22 (2d Cir. 2017) (summary order) (citing *Bank of N.Y.* v. *First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010)).  The party asserting the doctrine — here, CMS — bears the burden of showing that the identical issue was necessarily decided, while the opposing party bears the burden of showing it lacked a full and fair opportunity to litigate the issue in the prior forum.  *Proctor*, 715 F.3d at 414.

The doctrine "serves to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Envtl. Def.* v. *EPA*, 369 F.3d 193, 202 (2d Cir. 2004) (quoting *Allen* v. *McCurry*, 449 U.S. 90, 94 (1980)) (quotation marks omitted); *see also Kaufman* v. *Eli Lilly & Co.*, 65 N.Y.2d 449,

455 (1985) (recognizing that the doctrine is "based upon the general notion that it is not fair to permit a party to relitigate an issue that has already been decided against it"); *Parklane Hosiery Co., Inc.* v. *Shore*, 439 U.S. 322, 326 (1979) ("Collateral estoppel … has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.").

Collateral estoppel may be mutual or non-mutual. Mutual collateral estoppel prevents a litigant from "relitigating an identical issue with the same party or his privy." *Parklane Hosiery Co.*, 439 U.S. at 326. Non-mutual collateral estoppel prevents a losing party in one action from relitigating an issue against a different party. *Id.* at 329-30; *see also Blonder-Tongue Labs., Inc.* v. *Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971) ("Permitting repeated litigation of the same issues as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or a lack of discipline and of disinterestedness on the part of the lower courts." (internal quotation marks omitted)).

Non-mutual collateral estoppel, in turn, can be "offensive" or "defensive." As relevant here, defensive non-mutual collateral estoppel "occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Parklane Hosiery Co.*, 439 U.S. at 326 n.4. Thus, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a

party to the prior litigation." *Montana* v. *United States*, 440 U.S. 147, 153 (1979); *see also Ryan* v. *N.Y. Tel. Co.*, 62 N.Y.2d 494, 500 (1984) (recognizing that preclusion can apply "whether or not the tribunals or causes of action are the same").

Here, CMS's invocation of the doctrine implicates non-mutual defensive collateral estoppel, because CMS seeks to bar relitigation of an issue in this proceeding that it contends was decided in the matter before Judge Koeltl, in which CMS was not a party but the Receiver was plaintiff. *See Jasper* v. *Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("[A] new defendant in the plaintiff's second lawsuit may defensively invoke collateral estoppel regarding issues of law or fact decided in the plaintiff's first action.").

### b. *Simon* v. *GTR Source, LLC*

Fifteen days after the Receiver initiated the instant suit, he filed a second suit in his capacity as Receiver for FutureNet against GTR Source, LLC and Stephen W. Biegel, the latter in his capacity as a New York City Marshal. Like CMS, GTR Source had obtained a judgment against FutureNet in New York State Supreme Court. *GTR Source*, 2019 WL 7283279, at *2. GTR Source then caused the marshal to levy on FutureNet's Comerica account to satisfy that judgment. *Id.* Comerica turned over more than $100,000 of FutureNet's funds. *Id.* The Receiver claimed that the execution and levy had violated New York law, and brought suit against GTR Source and the marshal, asserting causes of action for wrongful restraint and execution against GTR, wrongful execution against the marshal, conversion against both defendants, and

trespass to chattels against both defendants. *Id.* at *3. The parties filed cross-motions for summary judgment.

The court in *GTR Source* ultimately denied the Receiver's motion for summary judgment and granted summary judgment against him, concluding in relevant part that:

> There is no dispute that the funds recovered by the Marshal were used to extinguish the debtor's valid debt owed under the valid court judgment. Therefore, the Receiver, who stood in the shoes of the debtor, suffered no damages in this case. The debt owed by FutureNet to GTR, which the Receiver does not dispute is a valid debt, has now been satisfied as a result of the Marshal's execution and a satisfaction of judgment has been entered. Moreover, the Receiver has only as much power to bring lawsuits as the entity in receivership. *See Eberhard* v. *Marcu*, 530 F.3d 122, 132 (2d Cir. 2008). Because the Receiver has not made a showing of damages it is not entitled to recover on a theory for wrongful execution as a matter of law at the summary judgment stage. The Receiver's motion for summary judgment on its claims for wrongful execution against GTR and the Marshal is therefore denied....
>
> For similar reasons that summary judgment is denied on the wrongful execution claims, summary judgment is denied for conversion and trespass to chattels because the Receiver has failed to establish that the Receiver sustained any damages in this case. There is no dispute that FutureNet owed a valid debt to GTR, that the debt was reflected in a valid state court judgment, and that the funds upon which the Marshal executed were used to satisfy that valid judgment. Therefore, the Receiver has failed to show that it was harmed by the seizure of the funds.
>
> There are no cases that hold that a private entity can be liable for causing a bank account to be levied upon when the judgment is valid and there are no damages alleged. In this case, the state court twice refused to vacate the judgment, and the Receiver does not point to any damages because the debt FutureNet owed to GTR

> was valid and the funds that were seized satisfied that valid debt. Therefore … the Receiver does not have a valid claim under New York law on the facts of this case, GTR is also entitled to summary judgment.

*Id.* at *4-5, *6-8. In reaching this decision, the *GTR Source* court relied on *Pagnotta*, 75 N.Y.S.3d 804, a New York state court decision that had held that the plaintiff there "can not establish any damages as there simply is no dispute that the … Plaintiff owe[s] the money that was levied on to pay the monies owed the Judgment Creditor." *Id.* at 810.

### c. Analysis

CMS argues that the *GTR Source* decision resolved a legal issue that is dispositive in this matter: a judgment debtor does not suffer legally cognizable damages when a judgment creditor seizes funds through an allegedly void process, if the debt owed was valid under a state court judgment and the funds that were seized were used to satisfy that debt. (Dkt. #32). The Court agrees. The legal issue on which *GTR Source* was decided — lack of damages — is also before the Court here, and in a materially identical circumstance. In both cases, a judgment creditor — here, CMS, and before Judge Koeltl, GTR Source, LLC — had a valid state court judgment against FutureNet. Both judgment creditors caused funds to be seized from FutureNet's Comerica bank account by means of the filing and service of restraining notices, executions, and levies through local law enforcement officers located in New York State. And in both matters, the Receiver, acting on behalf of FutureNet, seeks to recover the seized funds, claiming that the judgment creditors committed wrongful restraint and execution, conversion, and trespass to chattels. The holding in *GTR Source*,

that a judgment creditor cannot be liable for these torts where it seized funds to satisfy a valid state court judgment, is equally relevant, and dispositive, here. Thus, CMS has met its burden of establishing that an issue identical to one presented here — whether the Receiver has alleged that FutureNet suffered any damages — was actually litigated and decided in *GTR Source*, and that resolution of that issue was necessary to the judgment entered in that decision.

The Receiver has not argued that he lacked a lacked a full and fair opportunity to litigate the damages issue before Judge Koeltl in *GTR Source*. (*See generally* Dkt. #35). Instead, the Receiver spends the majority of his supplemental submission opposing collateral estoppel, claiming that the *GTR Source* decision was wrongly decided and, in effect, attempting to relitigate that case before this Court. (*Id.*). In particular, the Receiver argues that the *GTR Source* decision should not collaterally estop him from claiming damages because: (i) *GTR Source* decided a purely legal issue of great public concern; and (ii) to the extent the issue decided by *GTR Source* was a mixed question of fact and law, certain facts present in *GTR Source* are dissimilar to those present here. (*Id.*). The Court disagrees: Although the *GTR Source* decision decided a pure question of law, it is not of such great public concern that the principles of collateral estoppel should not apply.

As a general matter, "the doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." *United States* v. *Stauffer Chem. Co.*, 464 U.S. 165, 170-71 (1984); *see also Grieve* v. *Tamerin*, 269 F.3d 149, 153 (2d

Cir. 2001) ("The doctrine of collateral estoppel ('or issue preclusion') [may] bar[] relitigation of a specific legal or factual issue in a second proceeding[.]").  It is true, however, that the Second Circuit has recognized a limited exception to the applicability of collateral estoppel where the issue conclusively determined in a prior action was a pure question of law:  "[W]here pure questions of law — unmixed with any particular set of facts — are presented to a court, the interests of finality and judicial economy" that drive the application of collateral estoppel "may be outweighed by other substantive policies."  *Envtl. Def.* v. *E.P.A.*, 369 F.3d 193, 203 (2d Cir. 2004).

The Receiver argues that this exception to collateral estoppel applies here because the issue determined in *GTR Source* is a pure question of law.  (Dkt. #35).  The Court is inclined to agree.  Judge Koeltl held that a judgment debtor does not suffer legally cognizable damages when a judgment creditor causes a debtor's funds to be levied on, no matter if the process instituting the levy was valid, so long as the funds seized are used to satisfy a valid judgment existing against the debtor.  *GTR Source*, 2019 WL 7283279, at *4-5, *6-8.  This holding answers a question of law, independent of any particular set of facts.  Though this case and *GTR Source* have indisputable factual similarities, such as identity of judgment debtor and bank levied upon, the holding of *GTR Source* would speak to the state of the law just as clearly in a matter involving completely unrelated parties, an unrelated garnishee, and dissimilar facts.  Thus, the Court finds that the issue decided in *GTR Source* was a legal, not a factual, one.

But even the determination of a purely legal issue may have preclusive effect where "the interests of finality and judicial economy" are not "outweighed by other substantive policies." *Envtl. Def.*, 369 F.3d at 203. Here, the Receiver has identified a single substantive policy at play that might outweigh the interests that would normally counsel in favor of collateral estoppel: the Receiver argues that this matter is one of public concern, such that it would be inappropriate to apply collateral estoppel. (Dkt. #35).

For support, the Receiver cites to *Environmental Defense*, a case in which the petitioner sought to challenge whether a New York State plan to meet required air quality standards for ozone pollution violated the Clean Air Act. 369 F.3d at 196. As part of its defense, the respondent argued that the petitioner was collaterally estopped from raising certain arguments that had recently been decided against it in a similar case brought in the Fifth Circuit. *Id.* at 201-03. The Second Circuit determined that the Fifth Circuit decision would not preclude the respondent from arguing any issues, because there were "several significant factual dissimilarities" between the two matters and the Court could not "with any degree of certainty say that [the issues at hand had] already been resolved." *Id.* at 202. To the extent the issues decided by the Fifth Circuit were questions of law, independent of factual context, the Court stated that the "public nature of the issues presented" — "the quality of the air millions of citizens breathe daily" — would "counsel against strict application of collateral estoppel." *Id.* at 203. "The traditional concerns about relieving the parties of the costs of litigation and conserving judicial resources

must be weighed against the interests of nonparties where this legal challenge implicates the public good." *Id.*

While the Court acknowledges the wisdom of *Environmental Defense*'s teachings regarding the interplay between collateral estoppel and matters implicating the public good, they simply are not applicable here. The Receiver argues that the *GTR Source* decision "could not be of greater public concern," because more than 32,000 confessed judgments have been entered against out-of-state entities in New York, like the one entered against FutureNet in favor of CMS. (Dkt. #35). Left unstated in the Receiver's conclusory attempt to analogize this suit to *Environmental Defense* is the assumption that, if the *GTR Source* decision were to collaterally estop the Receiver from bringing his tort claims here, it could impact the thousands of other judgment debtors in New York. But there is no basis for this assumption. If the Court finds that the *GTR Source* decision collaterally estops the Receiver from making an argument concerning damages here, it will not preclude any judgment debtor who is not FutureNet from making any arguments or seeking recovery for wrongful restraint and execution, conversion, or trespass to chattels based on an identical fact pattern. Collateral estoppel cannot apply to any entity that was not a party to the *GTR Source* litigation. In this key respect, the Receiver's suit is completely unlike the legal challenge presented in *Environmental Defense*. The outcome of that suit concerned the quality of the air and self-evidently could have impacted the millions of citizens who breathe it daily. *Envtl. Def.*, 369 F.3d at 203. The outcome of the instant suit would only impact

FutureNet's bankruptcy estate. And while the Court does not downplay the importance of the relief sought to FutureNet's creditors, that relief is not of concern to the general public in the way that clean air is. Thus, the supposedly public nature of this suit would not weigh against the interests of finality and judicial economy that underlie the doctrine of collateral estoppel.

In the Court's estimation, the substantive policies at play in this suit actually support the invocation of collateral estoppel. In both this suit and the *GTR Source* litigation, the Receiver sought to recover funds from one of FutureNet's creditors for disbursement in FutureNet's bankruptcy estate. In the *GTR Source* decision, Judge Koeltl ruled that the Receiver could not recover funds because FutureNet had not been damaged. *GTR Source*, 2019 WL 7283279, at *4-5, *6-8. If the Court came to the opposite conclusion here, and the Receiver recovered damages from CMS, it would introduce disparity into the administration of the bankruptcy estate; two creditors in nearly identical circumstances would be treated differently. This would undermine the uniform administration of the bankruptcy estate, one of the goals of bankruptcy law. *See In re Enron Corp.*, No. 03 Civ. 5288 (DC), 2004 WL 2149100, at *3 (S.D.N.Y. Sept. 24, 2004) ("The importance of judicial efficiency and uniform administration of the bankruptcy estate outweighs any potential prejudice plaintiffs may suffer by the time involved in the bankruptcy mediation process."); *see also Adelphia Commc'ns Corp.* v. *Rigas*, No. 02 Civ. 8495 (GBD), 2003 WL 21297258, at *2 (S.D.N.Y. June 4, 2003) (listing "uniform administration of the bankruptcy estate" as a factor to be considered in

determining in what forum a matter should proceed); *Lombard* v. *Greenpoint Sav. Bank*, No. 3:96MC299 (AHN), 1997 WL 114619, at *2 (D. Conn. Feb. 24, 1997) ("Allowing the bankruptcy court to retain jurisdiction would result in the least delay and cost to the parties, the most efficient use of judicial resources, and the most uniform administration of the bankruptcy estate.").

For these reasons, the Court concludes that the Receiver is bound by collateral estoppel. The Receiver was a party to the *GTR Source* litigation and had a full and fair opportunity to litigate a critical issue that is identical to an equally critical issue present in this case. And though that issue was a question of law and not fact, the Receiver has not established that the issue would fit within an exception to the doctrine of collateral estoppel. Thus, the Receiver is collaterally estopped from arguing that FutureNet was damaged by the seizure of its funds, and necessarily fails to state a plausible claim for relief under the tort doctrines of wrongful restraint and execution, conversion, or trespass to chattels.

### 3. The Receiver Fails to Allege Legally Cognizable Damages

Even if the *GTR Source* decision did not preclude the Receiver from arguing that FutureNet suffered damages based on the facts present here, the Court would agree with the logic of the *GTR Source* decision and conclude that the Receiver has failed to allege that he or FutureNet suffered legally cognizable damages.[4] Even if the Restraining Notice, Execution, and Levy were void *ab*

---

[4] This is also an argument raised by Defendant: accepting the allegations contained within the Amended Complaint as true, the Receiver has not established that FutureNet suffered any damages when its Comerica bank funds were levied on. (Def. Br. 8).

*initio*, CMS still had an outstanding judgment against FutureNet for of $777,957.39, the validity of which has not been challenged in this action. The $322,592.59 taken from FutureNet's Comerica bank account went towards the payment of that judgment. Because the funds were taken to pay down a valid judgment entered against FutureNet, CMS claims that neither the Receiver nor FutureNet suffered any cognizable damages by the loss of those funds.

This conclusion is supported not just by the analysis provided in *GTR Source*, but also by *Pagnotta*, an analogous, though not identical, case decided by the Kings County Supreme Court. 75 N.Y.S.3d 804. There, the plaintiff had a valid judgment entered against it in a prior proceeding. *Id.* at 806-07. A New York City marshal levied on the plaintiff's bank account to satisfy that judgment. *Id.* The plaintiff brought a claim for wrongful execution against the marshal, alleging that the marshal's levy failed to comply with New York laws, and that the marshal was personally liable to plaintiff. *Id.* The marshal moved for summary judgment, and the court granted that motion. The court concluded that "Plaintiff can not establish any damages as there simply is no dispute that the ... Plaintiff owe[s] the money that was levied on to pay the monies owed the Judgment Creditor." *Id.* at 912-13.[5]

---

[5] The Receiver argues that *Pagnotta* is not persuasive authority, because it contradicts controlling precedent concerning set-offs. (Pl. Opp. 21-24). Under the doctrine of set-offs, "mutual debts between a creditor and a debtor's estate may be set-off against one another." *Lines* v. *Bank of Am. Nat. Trust & Sav. Ass'n*, 743 F. Supp. 176, 183 (S.D.N.Y. 1990). The court in *Pagnotta* did not mention the doctrine of set-off, but the Receiver argues that it must nevertheless have employed it when deciding that the plaintiff in that case did not suffer damages. (Pl. Opp. 21-23). The Receiver contends that the court must have set off the debt that the plaintiff owed pursuant to the valid judgment against any damages that might have been inflicted by the marshal's allegedly improper execution. (*Id.*). From this premise, the Receiver argues that the *Pagnotta* court's decision, impliedly based on the doctrine of set-offs, was based on an erroneous

The Court agrees with the logic animating the *Pagnotta* and *GTR Source*

decisions.  Whether or not one or more of the Restraining Notice, Execution,

and Levy were void, the Judgment entered against FutureNet and in favor of

CMS was valid and enforceable.  The funds levied from FutureNet's Comerica

bank account were used to pay that judgment, and accordingly, FutureNet did

---

understanding of that doctrine:  "[U]nder the law of set-offs 'a creditor who obtains a debtor's property wrongfully is not entitled to set off their liability for that wrongful conduct against a claim that the creditor holds against the debtor.'" (*Id.* at 22 (quoting *Lines*, 743 F. Supp. at 183)).

This same argument was presented by the Receiver in *Simon* v. *GTR Source, LLC*, No. 19 Civ. 1471 (JGK), 2019 WL 7283279, at *4 (S.D.N.Y. Dec. 26, 2019).  There, the court stated that:

> The Receiver is correct in one sense, which is that the law of set-offs has no applicability to this case....  [A] key requirement for a set-off is mutuality of debts between the parties, which is absent in this case, as it was in *Pagnotta*, because at no point did [CMS] owe a mutual debt to FutureNet just as FutureNet owed to [CMS]. *See Jordan* v. *Nat'l Shoe & Leather Bank*, 74 N.Y. 467, 474 (1878) ("[N]one but mutual debts could be set-off against one another, and that by mutual debts was meant, those which, on each side, were, at the time, due and payable[.]"); *Lines*, 743 F. Supp. at 183 ("Mutuality is not present when the creditor has no debt to set-off against the debtor except the liability for the wrongful conversion.").  For that reason, the law of set-offs is inapplicable in this case because there was no mutuality of debts between [CMS] and FutureNet and because the … alleged wrongful conversion alone cannot satisfy the requirement of mutuality.  However, in any event, and contrary to the Receiver's arguments, neither *Pagnotta* itself nor the Defendant's arguments before this Court purported to rest on the proposition that the Receiver sustained no damages because of an application of the law of set-offs.  Rather, the reasoning of *Pagnotta* rested on the principle that a plaintiff has not suffered any tort damages, which is a necessary element of a tort suit, when the plaintiff is a judgment debtor and the alleged converted funds were seized to satisfy a valid judgment against that judgment debtor.  For the same reasons, the Receiver suffered no damages in this case because the funds seized were used to satisfy a valid judgment resulting from a valid debt. This conclusion does not depend upon the law of set-offs, but rather results from a straightforward application of the usual principles of tort damages.

This Court agrees with the analysis presented in *GTR Source*.  *Pagnotta* did not rely on the doctrine of set-offs, because the doctrine was inapplicable in that case.  Rather, the *Pagnotta* court made a straightforward determination that an entity is not harmed when its funds are levied from an account to pay a valid judgment, even if the levy does not fully comply with lawful procedures.

not suffer any cognizable damages. The Receiver has not alleged that it suffered any other damages as a result of the ostensibly unlawful Restraining Notice, Execution, or Levy. "There are no cases that hold that a private entity can be liable for causing a bank account to be levied upon when the judgment is valid and there are no damages alleged." *GTR Source*, 2019 WL 7283279, at *8. Because damages are an essential element to each of the Receiver's claims, the Amended Complaint does not plausibly state a claim for relief.[6]

## CONCLUSION

For the reasons set forth above, CMS's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     February 7, 2020
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[6]     Because the Court concludes that the Receiver has failed to allege damages, claims, it need not address other issues raised in CMS's motion to dismiss, including: (i) the impact of New York's "separate entity" rule on the viability of the Receiver's claims; (ii) whether certain of the Receiver's claims are duplicative; (iii) whether CMS is a proper defendant; (iv) whether the Receiver failed to join necessary parties; and (v) whether the Receiver has failed to allege any recoverable damages.